Nathan M. Olsen, ISB No. 7373
Adam N. Olsen, ISB No. 11594
**OLSEN TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: nolsen@olsentaggart.com
       aolsen@olsentaggart.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICOLE RILEY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SKYLER NISEN, an individual,<br><br>Defendant. | Case No._____<br><br><br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL** |

COMES NOW, Plaintiff NICOLE RILEY, an individual ("Mrs. Riley" or "Plaintiff"), by and through counsel, Nathan M. Olsen, Esq., and Adam N. Olsen, Esq. of OLSEN TAGGART PLLC, and complains against SKYLER NISEN, an individual ("Officer Nisen" or "Defendant"), as follows:

### PARTIES

1. Plaintiff Mrs. Riley is an individual who is a resident of Canyon County, Idaho.

2. Defendant Officer Nisen is, at all times relevant, a police officer employed by the City of Middleton.

## JURISDICTION AND VENUE

3.     This action arises under 42 U.S.C. § 1983; jurisdiction is therefore proper under 28 U.S.C. § 1331.

4.     This Court has personal jurisdiction over the parties in this matter under FRCP 4(k)(1)(A) as all Parties reside in Idaho.

5.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) as the Defendant resides in Idaho and the substantial part of the acts giving rise to Plaintiff's claims occurred in Idaho.

## GENERAL ALLEGATIONS

6.     On July 29, 2021, at around 7:30pm, Mrs. Riley and her husband, Austin Riley, ("Mr. Riley") had left their home on 118 S. Highland Drive, Middleton, Idaho, to pick up items at the store.

7.     Mr. Riley was driving their 1996 Subaru Legacy—registered in both Mr. and Mrs. Riley's name—with Mrs. Riley in the front passenger seat.

8.     When the Rileys turned unto Main Street, only a few blocks away from their home, they noticed a patrol car ahead of the car in front of them, traveling in the same direction.

9.     Suddenly, the patrol car, operated by Defendant Officer Nisen abruptly turned into the middle turn lane, waited for the Rileys to pass, and then pulled behind them before activating his emergency lights.

10.     Mr. Riley, shocked by what was happening, turned off of Main Street and onto Jet Avenue and carefully pulled over and parked the car by the curb on the side of the road.

11.     At no point had Mr. Riley committed a traffic violation or exhibited suspicious behavior.

12. Upon pulling over behind the Rileys' car, Officer Nisen approached Mr. Riley from the driver side window and asked if he was "Austin" and told him that he was pulled over because the registered owner of the car had a "warrant for his arrest."

13. Mr. Riley informed Officer Nisen that he was, in fact, Austin, at which point Officer Nisen ordered Mr. Riley out of the car.

14. Mr. Riley complied, without any resistance, and was handcuffed by Officer Nisen and placed in front of Officer Nisen's patrol car, as Officer Nisen waited for confirmation from dispatch on the alleged warrant. At around this time, another Middleton Police Officer, Officer Watson, arrived on scene.

15. While waiting for confirmation on the warrants, Officer Nisen asked Mr. Riley if he was okay leaving the car with Mrs. Riley if he were arrested. Mr. Riley informed Officer Nisen that Mrs. Riley had been drinking and that he did not want the car to be left with Mrs. Riley.

16. To this, both officers assured Mr. and Mrs. Riley that if he were arrested, the Rileys' car would be left where it was because it was lawfully parked and not obstructing traffic. Specifically, Officer Nisen told Mr. Riley that "it should be fine where it's parked. It's not in the middle of the road. We'll secure it." When Officer Watson gave Mrs. Riley her husband's cell phone so that she could call someone to pick up the car, he told her "if something happens you can [call and] have someone come get the car." He reaffirmed that it was "legally parked" and insinuated that Mrs. Riley could remain in the car while she waited for someone to pick up the car.

COMPLAINT AND DEMAND FOR JURY TRIAL
Page-3

17. A few moments later, Officer Nisen allegedly received word from dispatch that Mr. Riley had two warrants out of Payette County. Officer Nisen frisked Mr. Riley and found a vape pen in his pocket, which he believed had THC.

18. After Officer Nisen had secured Mr. Riley in his patrol car, he walked toward Officer Watson, who was peering through the rearview window of the Rileys' car.

19. Officer Nisen appeared to turn off his body camara and then said to Officer Watson that Mr. Riley "was being kind of a jerk, wasn't he? Let's just tow this." To which Officer Watson responded by saying "he knew it." Finding affirmation in Officer Watson's response, Officer Nisen continued by stating "we're going to tow it" and "there might be something in there . . . I already have THC."

20. Officer Nisen then positioned himself on the driver side window of the Rileys' car while Officer Watson took a position on the passenger side.

21. After a brief back-and-forth with Mrs. Riley, Officer Nisen aggressively told Mrs. Riley to get out of the car because they were planning on towing the vehicle.

22. Mrs. Riley protested and truthfully informed Officer Nisen that she has someone coming to the scene to pick up the car.

23. Officer Nisen then wrongfully proclaimed that the Rileys' car is not registered in Mrs. Riley's name and told her to get out of the car or she will go to jail.

24. Officer Nisen then divulged the purpose for his aggressive and unwarranted demand that Mrs. Riley exit the car as an excuse to search the car under the guise of a vehicle inventory.

25. At no point did the officers see any drugs or suspicious items in the car.

26. Shortly after divulging his objective, Officer Nisen walked around the car and positioned himself next to the passenger side of the car, the door having been opened by Officer Watson.

27. Mrs. Riley again stated her utter confusion as to why a vehicle inventory of the car was necessary and protested the Defendants' aggressive and unwarranted demands that she exit the car—even though someone was coming over to pick up the car.

28. Having enough of Mrs. Riley's protest, Officer Nisen grabbed Mrs. Riley's right arm, told her she was under arrest, and then callously whipped her out of the car and then by centrifugal force spun her around using her right arm as an axis until she slammed into the car.

29. Officer Nisen then released his grip of Mrs. Riley's right arm and with both hands grabbed Mrs. Riley's left arm, while Officer Watson gripped and twisted Mrs. Riley's right wrist.

30. Mrs. Riley was in a complete state of shock and expressed to the officers that she did not "understand what was going on."

31. Around this time, Officer Nisen brutally twisted Mrs. Riley's left arm, wrenched it further and further up her back and then slammed her against the car.

32. Mrs. Riley screeched in pain and was in complete terror and again reminded the Officers that she had someone picking up the car, as she wept in pain.

33. Finally, Officer Watson calmly told Mrs. Riley to "listen" and told her she needed to place her right hand behind her back. Officer Watson then asked whether Mrs. Riley understood his command. Mrs. Riley stated that she understood the command and without any resistance placed her right hand behind her back to be handcuffed.

COMPLAINT AND DEMAND FOR JURY TRIAL

Page-5

34. Mrs. Riley was placed in a police vehicle and shortly thereafter, Mrs. Riley's sister-in-law arrived on scene to take custody of the car owned by the Rileys.

35. In pain, Mrs. Riley asked to be taken to the hospital to have x-rays done on her left elbow.

36. The x-rays showed a fracture in Mrs. Riley's left elbow. The pain from the fracture radiated from her elbow to her shoulder and wrist and was almost unbearable. Mrs. Riley was forced to wear a splint for approximately two weeks and a sling for another two weeks. Due to the pain and immobility of her arm, Mrs. Riley missed work for three months. Mrs. Riley continues to feel pain in her left elbow, wrist, and shoulder. Mrs. Riley's left arm is also crooked due to her elbow healing improperly.

37. After being seen at the hospital, Mrs. Riley was booked and released by the Middleton Police Department ("MPD") at around 2:00am on July 30, 2021.

38. Upset by Officer Nisen's unlawful conduct, sometime in the first week of August of 2021, she called and talked with the MPD Police Chief and complained against Officer Nisen and asked how she could file charges against him.

39. Instead of listening to Mrs. Riley's concerns, the MPD Police Chief defended Officer Nisen's unlawful actions and informed Mrs. Riley that if she wanted to file a complaint, she needed file a Notice of Tort Claim with the City of Middleton.

40. Later in the week, on Saturday, August 7, 2021, Mr. and Mrs. Riley were on their front porch when Officer Nisen, along with another MPD officer whose identity is unknown, arrived at the Rileys' home without any warning.

41. Officer Nisen approached the Rileys on the front porch, while the other officer took a position on the side of the house.

42. Officer Nisen then asked Mrs. Riley if she could speak to him alone.

43. Mrs. Riley refused and said she would only speak to Officer Nisen if her husband were present.

44. Officer Nisen refused Mrs. Riley's request and ordered Mr. Riley into the home or else "a repeat of last week" would occur.

45. Mr. Riley complied.

46. Officer Nisen then proceeded to tell Mrs. Riley that he was supposedly responding to a call from the Rileys' neighbor that witnessed Mr. Riley punch Mrs. Riley in the head and that Mrs. Riley ran down the street in pain.

47. Mrs. Riley truthfully informed Officer Nisen that the incident never occurred.

48. Officer Nisen then changed his story and claimed that it was a couple of neighbors who had reported the incident. Again, Mrs. Riley truthfully informed Officer Nisen that the allegations were untrue.

49. Officer Nisen then once again changed his story and claimed that it was a neighbor who told a third-party who then called in the incident.

50. Mrs. Riley again truthfully informed Officer Nisen that the allegations were untrue.

51. Yet, Officer Nisen continued to badger Mrs. Riley and her daughter who was with her during incident, until finally Officer Nisen left the scene.

52. Upon information and belief, there were no reports from neighbors alleging that Mr. Riley was abusing Mrs. Riley and the purpose of Officer Nisen's visit was to harass Mrs. Riley for reporting Defendant's wrongful conduct to the Middleton Police Chief.

53. Since the incident and Officer Nisen's visit to her home, Mrs. Riley is deeply worried for her safety in the community and is afraid that Defendant will continue to retaliate against them.

## COUNT I
## Violation of Civil Rights: 42 U.S.C § 1983
## (General Allegation)

54. Plaintiff hereby realleges the allegations set forth in the above paragraphs as if fully set forth herein.

55. The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

Every person who under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

56. The above-named Defendant jointly and severally violated Plaintiff's constitution rights pursuant to the First and Fourth Amendments, as adopted through the Fourteenth Amendment, to the United States Constitution. The Defendant's arrest deprived Plaintiff of: (1) the right to verbally oppose, challenge, or criticize a police officers' actions without retaliation; (2) the right to be free from excessive force by persons acting under color of law; and (3) the right to not be unlawfully detained.

57. The Defendant violated the Plaintiff's constitutional rights while acting under the color of state law.

58. As a direct and proximate result of the violations of Plaintiff's constitutional rights, Plaintiff suffered general and special damages as alleged in the Complaint and is entitled to compensatory relief under 42 U.S.C. § 1983.

## COUNT II

**Fourth Amendment Unlawful Arrest**

59. Plaintiff hereby realleges the allegations set forth in the above paragraphs as if fully set forth herein.

60. It is clearly established precedent under the Fourth Amendment that an officer may not arrest an individual unless the officer has probable cause that the individual committed a crime.

61. Defendant lacked probable cause to arrest Mrs. Riley.

62. Defendant had told Mr. and Mrs. Riley that the car was legally parked and not a danger to the community.

63. Mrs. Riley is also the owner of the car and had a legal right to refuse to have the car towed and inventoried.

64. Mrs. Riley also told the Defendant that she had someone coming to pick up the car.

65. Defendant had no probable cause that the car had illicit contraband and Mr. Riley was secured in Officer Nisen's patrol vehicle.

66. Mrs. Riley did not willfully resist or obstruct the officers.

67. Mrs. Riley stated on multiple occasions before and after she was accosted that she was confused by the Defendant's demands and actions and did not understand what was happening.

68. Moreover, Mrs. Riley's refusal to exit her car was mere passive resistance to an unlawful order.

69. As a direct and proximate result of the violation of Mrs. Riley's constitutional right, Mrs. Riley suffered general and special damages including having her left elbow broken.

70. Therefore, Mrs. Riley is entitled to compensatory relief under 42 U.S.C. § 1983.

**COUNT III**
**Fourth Amendment Excessive Force**

71. Plaintiff hereby realleges the allegations set forth in the above paragraphs as if fully set forth herein.

72. It is clearly established precedent under the Fourth Amendment that a police officer must not use excessive force against an individual.

73. Officer Nisen used excessive force against Mrs. Riley when he callously yanked her out of her car, swung her around until she slammed into the car, and then brutally twisted and hiked her left arm up her back and again slammed her against the car—breaking Mrs. Riley's left elbow.

74. Officer Nisen had a limited interest in using such force against Mrs. Riley.

    a. Mrs. Riley clearly had no weapons on her person as she was wearing a sun dress with no pockets;

    b. The Officers surrounded the car on both the passenger and driver side windows and could clearly see within the car that there was no weapons;

    c. Defendant had no evidence that the car had illicit contraband; and

    d. Mrs. Riley is substantially smaller and weaker than Officer Nisen.

75. When balancing the force used against Mrs. Riley against the totality of the circumstances, Officer Nisen's force was excessive.

76. Therefore, Officer Nisen used excessive force against Mrs. Riley in violation of the Fourth Amendment.

77. As a direct and proximate result of the violation of Mrs. Riley's constitutional right, Mrs. Riley suffered general and special damages as alleged in the Complaint and is entitled to compensatory relief under 42 U.S.C. § 1983.

## COUNT IV

**First Amendment Retaliation**
**(Officer Nisen)**

78. Plaintiff hereby realleges the allegations set forth in the above paragraphs as if fully set forth herein.

79. It is clearly established precedent that a police officer must not retaliate against an individual for expressing their First Amendment right to verbally oppose, challenge, or criticize a police officer's actions.

80. Mrs. Riley challenged and criticized police misconduct when she complained to the MPD Police Chief about Defendant's unlawful and unjustified conduct when she was arrested.

81. Officer Nisen retaliated against Mrs. Riley when he appeared at Mrs. Riley's home based on a fabricated complaint in order to harass and intimidate Mrs. Riley.

82. A person of ordinary firmness would cease to engage in continued speech against police misconduct if the officer who abused them appeared at their house and harassed and intimidated the person.

83. Had Mrs. Riley not complained against the Officer Nisen's unlawful actions, Officer Nisen would not have appeared at the Riley house in order to harass and intimidate Mrs. Riley.

84. As a direct and proximate result of the violation of Mrs. Riley's constitutional right, Mrs. Riley suffered general and special damages as alleged in the Complaint and is entitled to compensatory relief under 42 U.S.C. § 1983.

**ATTORNEYS' FEES AND COSTS**

85. Plaintiff has had to employ the legal services of Olsen Taggart PLLC. Pursuant to 42 USC § 1988 and any other applicable statute or rule, Plaintiff is entitled to an award of her attorneys' fees and costs for prevailing in the case.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1. An award of monetary damages for Defendant's wrongful conduct in an amount no less than $400,000

2. An award of their attorneys' fees and costs.

3. Any other legal or equitable relief as determined appropriate by the Court.

PLAINTIFF DEMANDS A JURY TRIAL FOR ALL ISSUES TRIABLE BY A JURY.

DATED:   July 8, 2022.

OLSEN TAGGART PLLC

/s/ *Nathan Olsen*
Nathan M. Olsen
Attorney for Plaintiff