UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICOLE RILEY, an individual,<br><br>        Plaintiff,<br><br>        v.<br><br>SKYLER NISEN, an individual,<br><br>        Defendant. | Case No. 1:22-cv-00281-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. (Dkts. 30, 31). The Court heard oral argument on the motions on April 10, 2024. For the reasons set forth below, the Court will grant the summary judgment motion of Plaintiff Nicole Riley and grant and deny in part the summary judgment motion of Defendant Officer Skyler Nisen. Specifically, the Court grants summary judgment in favor of Mrs. Riley on Count 2 (unlawful arrest) and Count 4 (unlawful seizure); it grants summary judgment in favor of Officer Nisen on Count 5 (retaliation); but it otherwise denies Officer Nisen's summary judgment motion on the remaining counts, including Count 3 (excessive force).

## I. BACKGROUND

### A.    The Traffic Stop

On July 29, 2021, Defendant Officer Nisen of the Middleton Police Department (MPD) pulled a car over after running the car's license plate and discovering Austin Riley, the driver and one of the car's registered owners, had an outstanding arrest warrant. (Dkt. 30-2, ¶ 1). Officer Nisen activated his bodycam, approached the car, and encountered the driver, Mr. Riley, and his passenger and wife, Plaintiff Nicole Riley. (Dkt. 31-4, Ex. A at 0:00-0:20). After confirming

Mr. Riley's identity, Officer Nisen explained that Mr. Riley had an outstanding arrest warrant and needed to step out of the car. (*Id.*) Mr. Riley complied, and Officer Nisen placed Mr. Riley in handcuffs and had him wait by the police car while Officer Nisen confirmed the warrant with dispatch. (*Id.* at 0:20-1:00).

As Officer Nisen and Mr. Riley were waiting for confirmation, Officer Brent Watson arrived at the scene and activated his bodycam. (Dkt. 31-4, Ex. B at 0:00). Officer Nisen asked Mr. Riley while they were waiting, "So if [your arrest warrant is] confirmed and you go to jail, are you okay if I release the car to [Mrs. Riley]?" (Dkt. 31-4, Ex. A at 4:13-4:34). Mr. Riley responded "no," explaining Mrs. Riley had been drinking and could walk home. (*Id.* at 4:13-4:34). Mr. Riley suggested leaving the car in a nearby parking lot, but Officer Nisen asked, "Who is going to move [the car]?" (*Id.* at 4:34-4:40). When Mr. Riley replied that he did not know, Officer Nisen stated, "I mean [the car] should be fine where it's parked. It's on the road, not in the middle of the road, so I'll just secure it. It's all good." (*Id.* at 4:40-5:00).

Mr. Riley then called out to Mrs. Riley, who was still in the car, asking if she would call Mr. Riley's sister, who he explained "might need to come get the car." (Dkt. 31-4, Ex. B at 1:45-2:00). Officer Watson offered to take Mr. Riley's cellphone to Mrs. Riley, who remained seated in the car, so she could call someone to get the car. (*Id.*) Mr. Riley gave his phone to Officer Watson, who walked the phone to Mrs. Riley and told her, "If something happens you can have someone come get the car and drive it. It's legally parked." (*Id.* at 4:11-18). After Officer Watson finished speaking with Mrs. Riley, she called Mr. Riley's sister, who agreed to come get the car. (Dkt. 31-3, ¶ 14).

After dispatch eventually confirmed Mr. Riley's arrest warrant, Officer Nisen formally placed Mr. Riley under arrest and conducted a search of Mr. Riley's person incident to arrest.

(Dkt. 31-4, Ex. A at 10:55-11:35). During this search, Officer Nisen found a vape pen in Mr. Riley's pocket. (*Id.* at 11:35-12:05). Officer Nisen asked Mr. Riley, "Is that just nicotine?" Mr. Riley replied, "No." Officer Nisen asked, "THC?", and Mr. Riley answered, "Yeah." Officer Nisen then confiscated the vape pen.

After searching Mr. Riley and placing him in the back of his police car, Officer Nisen deactivated his bodycam.[1] (Dkt. 31-4, Ex. B at 9:22). Immediately thereafter, Officer Nisen said to Officer Watson (whose bodycam remained activated), "[Mr. Riley is] trying to be a jerk, isn't he? We should just tow this," referring to the Rileys' car. (*Id.* at 9:22-9:40). Officer Watson responded, "I mean, he knew," and Officer Nisen agreed, saying "yeah, we're going to tow it." (*Id.*) Officer Nisen added, "[Mr. Riley] said he had used drugs, so there might be some in [the car]. I mean I already got THC, so we got the car." (*Id.*)

Following this exchange, Officers Nisen and Watson walked over to the car where Mrs. Riley, who was wearing a sundress and was barefoot, remained seated in the passenger seat of the car. (*Id.* at 9:40-9:49; Dkt. 31-2, ¶ 29). Officer Watson approached the passenger side while Officer Nisen approached the driver's side and ordered Mrs. Riley to exit the car. Officer Watson's bodycam captured the following exchange between Officer Nisen and Mrs. Riley:

> Officer Nisen: Hi, so he's going to jail. He said you'd been drinking so you either have to walk home or find a ride.
> Mrs. Riley: Yes, I have been drinking, but, officer, can I ask you what we were pulled over for?
> Officer Nisen: Because the registrant of the vehicle had a warrant.
> Mrs. Riley: The [registrant] on it had a warrant?
> Officer Nisen: Yep. The owner of the vehicle had a warrant. So, I pulled him over because he had a warrant.
> Mrs. Riley: So how did you know that?

---

[1]     Officer Nisen denies he deactivated his bodycam. Officer Watson's bodycam footage, however, shows Officer Nisen turning his bodycam off at the exact same time Officer Nisen's bodycam footage ends. *Smith v. Agdeppa*, 81 F.4th 994, 997 (9th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)) ("When, as here, some of the events were videotaped, the court 'view[s] the facts in the light depicted by the videotape.'").

MEMORANDUM DECISION AND ORDER - 3

| | |
|---|---|
| Officer Nisen: | Because I ran his plate. Okay, we're done talking. Get out of the vehicle because we're going to tow it. |
| Mrs. Riley: | Excuse me? I have someone coming to pick up the car, so there's no need to tow it. |
| Officer Nisen: | No, you're going to get out of the car. It's not your car. He doesn't want to release it to you, so I'm towing it. So, get out of the car. |
| Mrs. Riley: | It is my car. My name is on this car, and I am recording this [on a cellphone] by the way. |
| Officer Nisen: | That's fine. I don't care. Get out of the car. |
| Mrs. Riley: | My name is on this car. I am the owner of this car. |
| Officer Nisen: | Okay, either get out of the car or you're going to jail too. How about that? |
| Mrs. Riley: | Excuse me? |
| Officer Nisen: | Yes. Get out the car. We're towing it. We're searching it. |
| Mrs. Riley: | You're searching my car? |
| Officer Nisen: | Yes, we have to do a vehicle inventory of the car. Get out, ma'am. |
| Mrs. Riley: | No, you don't. This is my car. I am the owner of the car. |
| Officer Nisen: | Yes, we do. We're towing it. Get out of the car or you're going to jail. Last chance. |
| Mrs. Riley: | I am going to stay right here. No, this is—I don't understand what's going on. |

(Dkt. 31-4, Ex. B at 9:49-10:55).

Officer Nisen and Mrs. Riley continued to argue for several more seconds before Officer Nisen walked from the driver's side of the car to the passenger side where Officer Watson was already located. (*Id.* at 10:55-11:18). At that time, Mrs. Riley asked Officer Nisen, "I want to know on what grounds you have to search this car?" (*Id.* at 11:19-11:30). Officer Nisen responded, "We're doing a vehicle inventory, so nobody in the tow truck driver [sic] steals anything. So last chance to get out. Get out of the car or you're going to jail. I'm done playing games. Get out." (*Id.*)

After Mrs. Riley did not immediately respond or move to get out of the car, Officer Nisen told Mrs. Riley she was under arrest, grabbed her by the right arm, and forcibly pulled her out of the car. (*Id.* at 11:29-11:52). Officer Nisen then swung Mrs. Riley around by her right arm, pressed her face-forward against the car, grabbed her left arm, and attempted to grab the cellphone she was holding in her left hand. (*Id.*) Meanwhile, Officer Watson held Mrs. Riley's right arm with both

**MEMORANDUM DECISION AND ORDER - 4**

of his hands. (*Id.*) When Mrs. Riley moved the phone into her right hand, Officer Watson attempted to take the phone from her. (*Id.*)

While Officer Watson was holding Mrs. Riley's right arm and attempting to grab the phone, Officer Nisen performed a joint lock technique on Mrs. Riley's left arm by twisting her left arm behind her back and pushing it upward. (*Id.*; Dkt. 31-4, Ex. C at 41:6-12). In response, Mrs. Riley yelled in pain. (Dkt. 31-4, Ex. B at 11:50-12:28). Then, while Officer Watson continued to hold Mrs. Riley's right arm, Officer Nisen reached around behind Mrs. Riley and took the phone from her right hand. (Ex. B. at 12:07-08). After Officer Nisen took the phone, Officer Watson repeatedly told Mrs. Riley to "stop" and "listen" before eventually instructing her to put her right hand behind her back. (*Id.* at 12:20-56). Mrs. Riley did so without resisting and was handcuffed. (*Id.*) Officer Nisen does not dispute he broke Mrs. Riley's left arm when performing the joint lock technique.

After arresting Mrs. Riley, Officer Nisen conducted an inventory search of the Rileys' vehicle.[2] While the search was in progress, Mr. Riley's sister arrived on the scene and informed Officer Nisen and another officer, Sergeant Nathan Hilkey, she was there to take possession of the Rileys' car. (Dkt. 31-4, Ex. B at 20:40; Dkt. 31-5, ¶ 5). The officers refused to allow her to take the car, however, because they were conducting an inventory search and had already called a tow truck to come get the car. (Dkt. 31-5, ¶ 6).

---

[2]     Officer Nisen argues "[t]here is no undisputed evidence on summary judgment as to who did the search of the vehicle and when the search was performed." (Dkt. 38 at p. 3). The video from Officer Watson's bodycam, however, shows Officer Nisen searching the vehicle. (*Id.* at 17:23-20:45). Also, although Officer Nisen initially testified he thought Sergeant Hilkey performed the inventory search, he later admitted he conducted the search. (Dkt. 31-4, Ex. C at 57:14-19). Based on this admission and the video from Officer Watson's bodycam showing Officer Nisen searching the car, no genuine factual dispute exists that Officer Nisen performed the search.

MEMORANDUM DECISION AND ORDER - 5

Officer Nisen does not dispute the search of the Rileys' car did not yield any drugs, paraphernalia, contraband, or other evidence. (Dkt. 31-4, Ex. E at p. 1). An MPD "Abandoned Vehicle/Impound Notice" report, which was prepared before the car was released to the towing company, states "Driver Arrested" as the reason for impounding the car and that the car was "OK to release" after it had been impounded. (*Id.*)

Meanwhile during the car's search, Mrs. Riley was detained in a patrol car, told Officer Watson her arm hurt, and requested medical attention. (Dkt. 31-4, Ex. B at 21:05-21:09). Mrs. Riley was taken to a hospital where she was diagnosed with a "nondisplaced fracture of the coronoid process" with "[s]mall joint effusion." (Dkt. 30-3, ¶ 42). After leaving the hospital, Mrs. Riley was taken to jail and booked for resisting or obstructing law enforcement in violation of Idaho Code § 18-705. (Dkt. 30-7 at p. 1). The charge was ultimately dismissed.

### B.  Events After July 29, 2021[3]

After the traffic stop on July 29, 2021, but sometime before August 7, Mrs. Riley alleges she called MPD Chief of Police, Alan Takeuchi, to complain about Officer Nisen's conduct during her arrest. (Dkt. 30-12 at 64:22-65:6). Then, on August 7, the Rileys' neighbor called dispatch to report that her grandson allegedly saw Mr. Riley punch Mrs. Riley in the Rileys' backyard. (Dkt. 30-10 at 6:19-21; Dkt. 36-1, Ex. A). The neighbor requested that the police check on Mrs. Riley because the neighbor was concerned Mrs. Riley was hurt. (Dkt. 36-1, Ex. A). According to Officer Nisen, he was the only MPD officer on duty at the time of the neighbor's call. (Dkt. 30-2, ¶ 23). When responding to the call, Officer Nisen asked dispatch if he could get a "second" law enforcement officer to join him because the call concerned "the female and male

---

[3]     All facts regarding events after July 29, 2021, are only relevant to Mrs. Riley's § 1983 claim for retaliation.

that fought with [him] a couple weeks ago." (Dkt. 36-1, Ex. B at 1:58-2:06). Ultimately, only Officer Nisen (and an officer in training, who was accompanying him) went to the Rileys' home without backup.

Upon arriving at the Rileys' home, Officer Nisen encountered Mr. and Mrs. Riley. (Dkt. 30-12 at 47:21-53:15). Officer Nisen asked if he could speak with Mrs. Riley alone, but the Rileys stated they were not comfortable with Mrs. Riley speaking to him by herself. (*Id.*) According to Mrs. Riley, Officer Nisen responded, "Do you want a repeat of last week?" (*Id.*) Mrs. Riley then told Mr. Riley to go inside and asked her seventeen-year-old daughter to join her outside while she spoke with Officer Nisen. (*Id.*) Once Mr. Riley left, Officer Nisen told Mrs. Riley someone had called dispatch claiming they saw Mr. Riley punch her. (*Id.*) Although Mrs. Riley denied that Mr. Riley hit her, Officer Nisen continued to ask her if Mr. Riley had punched her. (*Id.*) Mrs. Riley continued to deny the allegations and eventually asked her daughter if Mr. Riley had hit Mrs. Riley. (*Id.*) Once her daughter answered no, Officer Nisen left the Rileys' home. (*Id.*)

A few days later, on August 11, 2021, Mrs. Riley called Chief Takeuchi to ask why Officer Nisen had come to her house on August 7 and requested Officer Nisen not do so anymore. (Dkt. 30-13). She recorded this August 11 call. The parties dispute whether Mrs. Riley's recorded August 11 call was the first or second call Mrs. Riley made to Chief Takeuchi about Officer Nisen's conduct. The record is unclear when Mrs. Riley's alleged first call occurred. Mrs. Riley argues the first call occurred sometime before Officer Nisen came to her home on August 7; meanwhile, Officer Nisen argues Mrs. Riley only called Chief Takeuchi once on August 11, after Officer Nisen went to her home on August 7.

### C.    Procedural History

Mrs. Riley sued Officer Nisen under 42 U.S.C. § 1983, alleging he violated her constitutional rights under the First and Fourth Amendments. Specifically, her Amended Complaint alleges claims for (1) unlawful arrest, (2) excessive force, (3) unlawful seizure for impounding the Rileys' car, and (4) retaliation.[4] Following discovery, Officer Nisen moved for summary judgment on all of Mrs. Riley's claims. (Dkt. 30). Mrs. Riley also moved for partial summary judgment on her claims for unlawful arrest and unlawful seizure. (Dkt. 31). Additionally, Mrs. Riley has moved for sanctions and to amend her complaint to allege punitive damages. (Dkts. 32, 33).

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477

---

[4]    Count 1 of the Amended Complaint asserts a § 1983 claim and is entitled "General Allegation." At oral argument, Mrs. Riley's counsel confirmed that Count 1 includes only general allegations in support of Mrs. Riley's four substantive § 1983 claims and that Count 1 does not state a separate claim for relief.

U.S. at 250 (citation omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

At the summary judgment stage, the trial court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See  Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). When, as here, some of the events were videotaped, the court "view[s] the facts in the light depicted by the videotape." *Smith v. Agdeppa*, 81 F.4th 994, 997 (9th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

Where parties file cross motions for summary judgment on the same issue, the court must consider both motions and all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc., v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "[E]ach motion must be considered on its own merits. *Id.* Even if both parties assert that no genuine disputes of material fact exist, the court must still review the record and determine that there are no disputes of material fact before granting summary judgment to either party. *Id.*

In resolving a claim of qualified immunity, the court must construe disputed factual and credibility issues in favor of the non-moving party. "[S]ummary judgment [for the defendant] is

improper if, resolving all disputes of fact and credibility in favor of the party asserting the injury, (1) the facts adduced show that the officer's conduct violated a constitutional right, and (2) that right was 'clearly established' at the time of the violation." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The plaintiff bears the burden of showing the rights allegedly violated were clearly established. *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).

Qualified immunity is a question of law, not a question of fact. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). "Immunity ordinarily should be decided by the court." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Only when "historical facts material to the qualified immunity determination are in dispute" should the district court submit the factual dispute to a jury. *Torres*, 548 F.3d at 1211. "When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity. The issue can then be raised in a Rule 50(a) motion at the close of evidence." *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017) (quoting *Ninth Circuit Model Civil Jury Instruction* 9.34 (2017)).

If, however, the only material dispute concerns what inferences properly may be drawn from the historical facts, a district court should decide the issue of qualified immunity. *Conner v. Heima*, 672 F.3d 1126, 1131 n.2 (9th Cir. 2012) ("[W]hile determining the facts is the jury's job (where the facts are in dispute), determining what objectively reasonable inferences may be drawn from such facts may be determined by the court as a matter of logic and law."). Only the judge can decide whether a particular constitutional right was "clearly established" once any factual issues are resolved by a fact finder. *See Morales*, 873 F.3d at 823.

### III. ANALYSIS

Section 1983 provides any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party. 42 U.S.C. § 1983. The elements of a § 1983 claim are (1) the action was committed by a person acting "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1107 (9th Cir. 2022) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). To be individually liable under § 1983, an individual must personally participate in an alleged rights deprivation. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010).

Under the doctrine of qualified immunity, however, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014). The qualified immunity analysis consists of two prongs: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2) whether that right was clearly established at the time the defendant acted. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc); *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020).

Whether a right is clearly established turns on whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018)). In analyzing whether a right is clearly established, the inquiry begins by "defining the law at issue in a concrete, particularized manner." *Shafer*, 868 F.3d at 1117. To show a right was clearly established at the time of the violation, the plaintiff must demonstrate the law gave the

officer fair warning the relevant conduct was unconstitutional. *See Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022).

In the Ninth Circuit, to determine whether a right was clearly established, the court looks to binding precedent, i.e, whether Supreme Court or Ninth Circuit decisional authority clearly established the right. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). "[I]n the absence of binding precedent, [the court looks] to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Id.* (quotation omitted). Generally, a plaintiff need not find "a case directly on point," but existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017). "The longstanding principle is that 'clearly established law' should not be defined 'at a high level of generality.'" *Id.* (quotation omitted). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.*

Showing, however, that the contours of a right are sufficiently clear that every reasonable official would have understood what he was doing violated the plaintiff's right is enough. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 784 (9th Cir. 2022). In other words, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful.'" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Officials can still be on notice that their conduct violates the law in cases involving the application of well-settled law to a new factual permutation. *Eng v. Cooley*, 552 F.3d 1062, 1076 (9th Cir. 2009).

MEMORANDUM DECISION AND ORDER - 12

**A.      Unreasonable Seizure of Property - Impoundment**

**1.      Constitutional Violation**

Mrs. Riley alleges in Count 4 that Officer Nisen seized her car without probable cause or other justification in violation of the Fourth Amendment. An officer "seizes" the property of a plaintiff when he takes possession of or controls the property in a manner that meaningfully interferes with the plaintiff's right to possess the property. *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017). The impoundment of a vehicle is a seizure within the meaning of the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). A seizure conducted without a warrant, including an impoundment, is *per se* unreasonable under the Fourth Amendment—subject to specifically established and well-delineated exceptions. *Brewster*, 859 F.3d at 1196. Those exceptions include the automobile exception and the community caretaking exception.

"Under the community caretaking exception, 'police officers may impound, vehicles that jeopardize public safety and the efficient movement of vehicular traffic.'" *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (quoting *Miranda*, 429 F.3d at 864). "The police's authority to search and seize property when acting in its role as 'community caretaker' has a different source than its authority to search and seize property to investigate criminal activity." *Miranda*, 429 F.3d at 863. "Whether an impoundment is warranted under [the] community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target of vandalism or theft." *Id.* at 864. Further, "impounding a car without regard to whether [an arrestee] can provide for its removal is patently unreasonable." *Id.* at 865.

**MEMORANDUM DECISION AND ORDER - 13**

Under the automobile exception, law enforcement may tow a vehicle when there is probable cause to believe the car is or contains evidence of a crime. *See United States v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985) (concluding impoundment of defendant's car was lawful because law enforcement had probable cause to believe it was used in robbery). Importantly, however, in determining whether probable cause exists, police "may not disregard facts tending to dissipate probable cause." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024-25 (9th Cir. 2009) (internal quotation marks and citation omitted). The Supreme Court has noted that "probable cause may cease to exist" when the police "learn, for instance, that contraband is no longer located at the place to be searched." *United States v. Grubbs,* 547 U.S. 90, 95 n. 2 (2006); *see also United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) ("If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity.").

Both parties move for summary judgment on Mrs. Riley's claim that Officer Nisen unreasonably seized and impounded her car. She argues Officer Nisen lacked justification under the community caretaking function to impound her vehicle because it was "legally parked" and because her sister-in-law arrived on the scene to take possession of the vehicle. Further, Mrs. Riley argues Officer Nisen lacked probable cause to impound the vehicle because, although Mr. Riley possessed a vape pen used to smoke THC, a search did not reveal any contraband and "the tow sheet" states the vehicle was "OK to Release." (Dkt. 31-1 at pp. 8-9). In response, Officer Nisen does not dispute that the community caretaking function was not a basis to impound the vehicle. Instead, Officer Nisen argues that because Mr. Riley "admitted to having THC on his person," Officer Nisen had authority to search and seize the vehicle. (*See, e.g.*, Dkt. 38 at p. 3).

The undisputed facts show that Officer Nisen did not have authority to impound the Rileys'
car, even if he had legal authority to search it. For purposes of analysis, the Court assumes Officer
Nisen did have legal authority to search the car. Namely, after arresting Mr. Riley, Officer Nisen
likely had probable cause to believe the car contained contraband or evidence of a crime. *See
California v. Acevedo*, 500 U.S. 565, 569 (1991) (holding police may search automobile and
containers within it when they have probable cause to believe contraband or evidence is contained
therein). Undisputed, however, is that the search of the car revealed no contraband or other
evidence. Mrs. Riley states that "no illicit contraband was found in the Riley car during the search."
(Dkt. 31-2 at ¶ 46). Further, Officer Nisen testified during his depositions that "I don't think I
found anything in the car, no." (Dkt. 30-4 at p. 60, ll. 10-13). Because the search dissipated any
probable cause that the car was or contained evidence, no legal basis existed to impound the car
after the search failed to locate evidence, which dissipated any probable cause.

In opposition to summary judgment, Officer Nisen argues that "at a minimum there is a
genuine issue of material fact who towed [the Rileys'] vehicle and when it was actually searched
incident to [Mr. Riley's] arrest." (Dkt. 38). Contrary to this assertion, however, the video from
Officer Watson's bodycam clearly shows Officer Nisen searching the car on the scene in the
location where Mr. Riley originally parked it at the curb. Further, there is no genuine factual issue
about who towed the vehicle—the MPD towed it. To the extent Officer Nisen is disclaiming any
involvement in the decision to tow the car, that argument is belied by the fact that Officer Nisen is
on video stating "we're going to tow [the car]" after he arrested Mr. Riley and ordering Mrs. Riley
out of the car so it could be towed. This conduct is sufficient to make Officer Nisen individually
liable under § 1983 for the unreasonable seizure of the car. *See Avalos*, 596 F.3d at 587 (noting
personal participation in conduct adequate to establish liability).

### 2.      Clearly Established Right

Having concluded Officer Nisen unlawfully seized the Rileys' car in violation of Mrs. Riley's Fourth Amendment right, the Court must determine whether that right was clearly established at the time of Officer Nisen's conduct. *See Lane*, 573 U.S. at 243 (ruling courts may not award damages unless official violated a right and the right was clearly established). The Court concludes Mrs. Riley's right not to have her car impounded absent the discovery of any contraband in the car or absent a reasonable belief the car posed a safety or other hazard was clearly established. At the time of Officer Nisen's conduct, the law was well established that: (1) the impoundment of a vehicle is a seizure within the meaning of the Fourth Amendment, *Miranda*, 429 F.3d at 862; (2) an impoundment of a vehicle is *per se* unreasonable under the Fourth Amendment unless the community caretaking exception or the automobile exception applies; *Brewster*, 859 F.3d at 1196; and (3) probable cause dissipates and ceases to exist once the investigating officer learns contraband is not located in the searched vehicle. *Grubbs,* 547 U.S. at 95 n.2; *Ortiz-Hernandez*, 427 F.3d at 574. Further, the law was clearly established that "impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Miranda*, 429 F.3d at 865. Based on these well-established legal principles, Mrs. Riley's right not to have her car seized after probable cause dissipated was clearly established at the time Officer Nisen violated that right. *See Dodge*, 56 F.4th at 784 (ruling general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful).

Based on Mrs. Riley's clearly established right and considering the facts in the light most favorable to her, no reasonable officer would have thought impounding the Rileys' car was lawful.

Because Mrs. Riley's right not to have her car impounded was clearly established and because Officer Nisen violated that right, he is not entitled to qualified immunity and is liable for the violation. Accordingly, the Court grants Mrs. Riley summary judgment on Count 4.

### B.   Unreasonable Seizure of Person - Probable Cause Arrest

#### 1.   Constitutional Violation

Mrs. Riley also alleges in Count 2 that Officer Nisen arrested her without probable cause in violation of the Fourth Amendment. (Dkt. 24 at ¶¶ 61-72). A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment if the arrest was without probable cause or other justification. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012). Probable cause exists for a warrantless arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded there was a fair probability the suspect had committed a crime. *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010). Determining whether an officer had probable cause for an arrest requires examination of the events leading up to the arrest and whether these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018).

Because Officer Nisen arrested Mrs. Riley for violating Idaho Code § 18-705, her unlawful arrest claim turns on whether Officer Nisen had probable cause to believe she was resisting and obstructing law enforcement. "Section 18-705 makes it a crime to 'willfully resist[], delay[] or obstruct[] any public officer, in the discharge, or attempt to discharge . . . any duty of his office.'" *State v. Bishop*, 203 P.3d 1203, 1215 (Idaho 2009) (citing I.C. § 18-705). To be guilty under I.C. § 18-705, three elements must be satisfied: "(1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the [arrestee] knew that the person was an officer;

and (3) the [arrestee] also knew at the time of the resistance that the officer was attempting to perform some official act or duty." *Bishop*, 203 P.3d at 1215 (internal quotation marks and citation omitted).

The Idaho Supreme Court has ruled that "the term 'duty' in § 18-705 includes only 'those lawful and authorized acts of a public officer.' Because an unlawful act is not considered a 'duty' under the statute, an individual may peacefully obstruct or refuse to obey an officer's unlawful act without violating the statute." *Id.* at 1216 (quoting *State v. Wilkerson*, 755 P.2d 471, 477 (Idaho Ct. App. 1988), *aff'd*, 766 P.2d 1238, 1239 (Idaho 1988)). "[W]here an individual refuses to obey an order or obstructs an act of a public officer which is contrary to the law, be it statute or constitution, that individual does not violate I.C. § 18-705." *Wilkerson*, 755 P.2d at 477. "[A]n individual may peacefully resist without violating the statute"; "[a]n individual may not, however, use force or violence to resist." *Bishop*, 203 P.3d at 1216.

In determining a violation of I.C. § 18-705, an arrestee's "subjective belief that the officer's act is lawful is not an element of resisting and obstructing officers." *State v. Orr*, 335 P.3d 51, 56 (Idaho Ct. App. 2014). Rather, "what is required is that the officer was, in fact, *lawfully* attempting to perform some official act or duty and that [the arrestee] knew that the officer was attempting that act." *Id.* (emphasis added). Although generally an officer's subjective intent has no bearing on whether a seizure is unreasonable under the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 397 (1989), the officer's subjective intent is relevant in assessing a Fourth Amendment violation to the extent the officer conveyed that intent to the arrestee. *Michigan v. Chesternut*, 486 U.S. 567, 575 n.7 (1988).

In this case, both parties assert they are entitled to summary judgment on Count 2. Officer Nisen argues he undisputedly had probable cause to believe Mrs. Riley violated I.C. § 18-705. In

support, he notes that he informed her that Mr. Riley had been arrested and that the police were going to tow the car; he instructed her at least fourteen times to get out of the car; and she repeatedly refused to obey his directions. (Dkt. 30-1 at p. 5). Additionally, Officer Nisen argues he had "the legal right" to order Mrs. Riley out of the vehicle pending completion of the traffic stop. (Dkt. 38 at p. 2). Meanwhile, Mrs. Riley challenges the third element of I.C. § 18-705, i.e., that she knew at the time of her resistance Officer Nisen was attempting to perform a lawful official act or duty. (Dkt. 31-1 at pp. 3-10.) Although Mrs. Riley does not dispute Officer Nisen had authority to order her out of the car, she argues the facts are undisputed that Officer Nisen ordered her to exit the car "so he could conduct a vehicle inventory search," which was an unlawful order she passively resisted. (Dkt. 36 at p. 5-6; Dkt. 31-1 at p. 7).

As noted above, the Court assumes Officer Nisen had the legal authority to search the car because he likely had probable cause it contained contraband after arresting Mr. Riley. The undisputed facts show, however, that Officer Nisen did not order Mrs. Riley out of the car to conduct a search for contraband. Rather, he repeatedly ordered her out of the car so that it could be towed. Specifically, he ordered her to "[g]et out of the vehicle because we are going to tow it." (Dkt. 31-4, Ex. B at (9:49-10:55). Thereafter, he again told Mrs. Riley twice that "we're towing it" and that "we're searching the car" for purposes of do[ing] a vehicle inventory of the car." (*Id.*) He then reiterated his purpose was to do an inventory search "so nobody . . . steals anything." (*Id.*) At no time did Officer Nisen tell Mrs. Riley his purpose for ordering her out of the car was to conduct a search for contraband.

Based on Officer Nisen's video-recorded commands to Mrs. Riley, he was undisputedly not ordering her to exit the car for purposes of conducting a search under the automobile exception

as he contends in opposition to summary judgment.[5] Although an officer's subjective intentions generally do bear on whether a seizure is unreasonable under the Fourth Amendment, in this case Officer Nisen's subjective intent—to conduct an inventory search and to tow the car—is relevant because he conveyed that intent to Mrs. Riley. *See Chesternut*, 486 U.S. at 575 n.7. Because Officer Nisen did not order Mrs. Riley to exit the car so he could perform a *lawful* duty—namely, to search the car under the automobile exception—Mrs. Riley did not violate I.C. § 18-705 by passively refusing to obey his command. *See Bishop*, 203 P.3d at 1216 (noting "duty" under I.C. § 18-705 only includes public officer's lawful acts and individual may peacefully obstruct or refuse to obey unlawful act without violating statute). Under the totality of circumstances known to Officer Nisen, a prudent person would not have concluded probable cause existed to arrest Mrs. Riley for violating I.C. § 18-705, and Officer Nisen violated her Fourth Amendment right by arresting her without probable cause.

## 2.    Clearly Established Right

Having concluded Officer Nisen arrested Mrs. Riley without probable cause in violation of her Fourth Amendment right, the Court must determine whether that right was clearly established at the time of Officer Nisen's conduct. *See Lane*, 573 U.S. at 243 (ruling courts may not award damages unless official violated a right and the right was clearly established). Because the standard for probable cause is well settled, "whether an unlawful arrest violated clearly

---

[5]    Officer Nisen does not rely on the community caretaking exception to oppose to summary judgment. Regardless, he did not have legal authority to conduct an inventory search and to tow the car under that exception. The exception applies only if the vehicle is creating a hazard or is the target of vandalism or theft. *Miranda*, 429 F.3d at 864 (describing exception). The undisputed facts show the Rileys' car was not creating a hazard or subject to vandalism or theft. Both Officers Nisen and Watson concluded the Rileys' car was lawfully parked. Officer Nisen told Mr. Riley the car "should be fine where it's parked. It's on the road, not in the middle of the road, so I'll just secure it. It's all good." (Dkt. 31-4, Ex. A at 4:40-5:00). Similarly, Officer Watson told Mrs. Riley that "you can have someone come get the car and drive it. It's legally parked." (Dkt. 31-4, Ex. B at 4:11-18). Moreover, Mr. Riley's sister arrived to take the car.

MEMORANDUM DECISION AND ORDER - 20

established law" turns on "whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1233 (9th Cir. 2016).

At the time of Officer Nisen's conduct, the law was clearly established that an officer could not impound an arrestee's legally parked vehicle which was not creating a hazard and not subject to vandalism or theft. *See, e.g.*, *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008) (concluding no community caretaking rationale for impounding arrestee's legally parked car). Further, the law was clearly established that every formal arrest is unreasonable unless it is supported by probable cause. *See, e.g.*, *Mackinney v. Nielsen,* 69 F.3d 1002, 1006 (9th Cir. 1995). Finally, the law was clearly established that an individual does not violate I.C. § 18-705 for passively resisting or disobeying an unlawful order. *Bishop*, 203 P.3d at 1216; *Wilkerson*, 755 P.2d at 477. Based on these well-established legal principles, Mrs. Riley's right not to be arrested for passively refusing to obey an unlawful order was clearly established at the time Officer Nisen violated that right. *See Dodge*, 56 F.4th at 784 (ruling general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful).

Based on Mrs. Riley's clearly established right and considering the facts in the light most favorable to her, no reasonable officer would have thought it lawful to order Ms. Riley out of the car to impound it or to arrest Mrs. Riley for refusing to exit the car in response to Officer Nisen's unlawful commands. Accordingly, Officer Nisen is not entitled to qualified immunity and is liable for unlawfully arresting Mrs. Riley, and the Court grants summary judgment in her favor on Count 2.

### C.      Unreasonable Seizure of Person -- Excessive Force

#### 1.      Constitutional Violation

Mrs. Riley alleges in Count 3 that Officer Nisen used excessive force in violation of the Fourth Amendment. An excessive force claim is separate and distinct from a related unlawful arrest claim. *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). Therefore, "establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Id.* Consequently, the "force used by an officer to effectuate an arrest, 'regardless of whether [the officer] had probable cause to [make the] arrest,' may still be reasonable, for instance to overcome the arrestee's forcible resistance." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)).

The Supreme Court's decision in *Graham*, 490 U.S. 386, establishes the framework for evaluating excessive force claims. Under *Graham*, "[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). *Graham* set forth three, non-exclusive factors for evaluating excessive force claims, including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the arrestee] is actively resisting arrest or attempting to evade arrest by flight." *Id.* Other factors may include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). In other words, the question is whether the totality of circumstances justifies the officer's actions. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *see also Hopson v. Alexander*, 71 F.4th 692, 698 (9th Cir. 2023) (listing factors).

Excessive force claims are analyzed under the objectively reasonable standard. *Lombardo v. City of St. Louis*, 1594 U.S. 464, 466 n.2 (2021). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 1872. An officer's subjective intent or motivation is not relevant to the reasonableness inquiry in an excessive force claim. *Shafer*, 868 F.3d at 1116.

In this case, Officer Nisen moves for summary judgment on Count 3, arguing he did not use excessive force against Mrs. Riley--either when he removed her from the car or when he used the pain compliance technique called a joint lock. He asserts "it is undisputed [Mrs. Riley] was resisting the officers' commands for her to exit the vehicle." (Dkt. at 30-1 at p. 8). In support, he notes he commanded her "at least fourteen (14) time to get out of the car, and she either ignored or expressly rejected each command"; "[w]hen she was given a final warning, she simply stared at the officer, continuing to refuse to get out of the vehicle"; and she "plainly resisted the officers' attempts to handcuff her." (*Id.*).

Mrs. Riley opposes Officer Nisen's assertion he did not use excessive force. In support, she argues that "the events leading up to the force applied against [her] did not justify the force used." (Dkt. 36 at p. 10). She notes, for example, that she posed no physical threat to the officers; both officers were "significantly stronger" than her; neither officer told her to place her hands behind her back before Officer Nisen used the joint lock technique; Officer Nisen already had "full control" of her left arm; Officer Watson had "two hands" on her right arm when Officer Nisen

used the technique; and Officer Nisen held her in a joint lock for "over a minute." (*Id.* at pp. 10-11).

The Court concludes genuine issues of material fact preclude summary judgment in favor of Officer Nisen on Count 3. These issues include, for example, whether Officer Nisen was attempting to handcuff Mrs. Riley (versus attempting to grab her phone); whether she understood the officers were attempting to handcuff her before asking her to put her hands behind her back; whether she posed an immediate threat to the officers' safety; whether she was actively resisting arrest after being pulled from the car;[6] the relationship between the need for force and the amount of force used; the extent of Mrs. Riley's injury; any effort the officers made to temper or limit the force; the severity of the security problem Mrs. Riley posed; and whether the threat the officers perceived was reasonable. In other words, at issue is whether Officer Nisen's force was reasonable under the totality of the circumstances. *See Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (noting Ninth Circuit has repeatedly held that "the reasonableness of force used is ordinarily a question of fact for the jury.").

---

[6] To the extent Officer Nisen suggests there are disputed factual issues regarding the nature of Mrs. Riley's resistance as passive or active before he arrested her and pulled her from the car, the Court disagrees. As stated above, while in the car Mrs. Riley was passively resisting Officer Nisen's unlawful commands to exit the car so he could impound it. Indeed, Officer Nisen even describes that conduct in a passive manner, stating that she "ignored" his commands and that she "simply stared" at him instead of exiting the car. (Dkt. 30-1 at p. 8). *See, e.g.*, *Rice v. Morehouse*, 989 F.3d 1112, 1123 (9th Cir. 2021) (concluding arrestee's refusal to exit car is closer to purely passive rather than minor or active resistance); *Nelson v. City of Davis*, 685 F.3d 867, 881-82 (9th Cir. 2012) (concluding failure to fully or immediately comply with officer's orders is not active resistance); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1165-66 (9th Cir.2011) (concluding arrestee's repeated refusal to reenter vehicle at officer's command is not active resistance); *Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994) (finding that protestors' "remaining seated, refusing to move, and refusing to bear weight" despite police orders to the contrary constituted "passive resistance").

MEMORANDUM DECISION AND ORDER - 24

####        2.        Qualified Immunity

Having concluded material factual issues preclude summary judgment on Mrs. Riley's claim of excessive force, the Court must consider whether Officer Nisen is entitled, nonetheless, to qualified immunity. Before Officer Nisen's conduct at issue, the Ninth Circuit had "clearly established one's 'right to be free from the application of non-trivial force for engaging in mere passive resistance.'" *Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021) (citing *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)).  For example, in *Rice*, the Ninth Circuit ruled a reasonable jury could conclude the State had minimal interest in the use of force to remove a passenger from his vehicle for passively resisting what he believed to be an unlawful order to exit his vehicle. 989 F.3d at 1121-27.

Construing the facts in Mrs. Riley's favor, the Court concludes a reasonable jury could find the State had a minimal interest in using force against Mrs. Riley. Considering the *Graham* factors, Mrs. Riley did not pose any immediate safety concern; her alleged crime of resisting arrest was not severe; she was not actively resisting arrest; and the officers did not apparently consider other available tactics. *See Rice*, 989 F.3d at 1122-23 (considering *Graham* and additional factor of other available tactics). Likewise, other facts viewed in Mrs. Riley's favor support the conclusion that a reasonable jury could find Officer Nisen used excessive force, including that he did not immediately instruct Mrs. Riley to put her hands behind her back, was focused on attempting to take her phone away, and broke her arm. Balancing the competing factors, the Court further concludes a reasonable jury could find Officer Nisen's use of force outweighed his need to use it. *See id.* at 1124 (balancing competing interests).

Based on Mrs. Riley's clearly established right to be free from the application of non-trivial force for engaging in passive resistance in response to an unlawful order and considering the facts

in the light most favorable to Mrs. Riley, a jury could conclude Officer Nisen's use of force was objectively unreasonable and, therefore, constitutionally excessive. Accordingly, Officer Nisen is not entitled to qualified immunity, and factual questions regarding whether he used excessive force preclude summary judgment on Count 3.

### D.      First Amendment — Retaliation

Mrs. Riley alleges in Count 5 that Officer Nisen retaliated against her for complaining to the Middleton Chief of Police, Chief Takeuchi, about Officer Nisen's "unlawful and unjustified conduct" when he arrested her. (Dkt. 24 at p. 12). The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *See Ballentine*, 28 F.4th at 61 (citation omitted). To establish a retaliation claim under § 1983, a plaintiff must prove: (1) she engaged in a constitutionally protected activity; (2) as a result, the defendant subjected her to adverse action, which would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *See id.*

To satisfy the third prong of the prima facie claim, a plaintiff must show "the 'protected conduct played a part, substantial or otherwise,' in the defendant's wrongdoing." *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). A plaintiff can make this showing using "circumstantial evidence such as a proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action." *Id.* (citation omitted).

If the plaintiff succeeds in establishing the prima facie elements of a retaliation claim, "the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he

would have taken the action complained of." *Id.* at 778 (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Under this "but for" causation analysis, "if the government officials would have taken the same adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's speech, then the officials' animus was not a but-for cause of the adverse action, and there was no violation of the plaintiff's constitutional rights." *Id.* (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020)).

Officer Nisen moves for summary judgment on Mrs. Riley's retaliation claim. In support, Officer Nisen argues that the neighbor's report of a domestic dispute between the Rileys was not fabricated; he was the only MPD officer on duty to respond to the report; and Mrs. Riley did not call Chief Takeuchi to complain about Officer Nisen until *after* Officer Nisen responded to the report. (Dkt. 30-1 at p. 11). Also, at oral argument, Officer Nisen argued no evidence supports that he knew Mrs. Riley complained about him at any time, including before he went to her home on August 7. In response, Mrs. Riley challenges the credibility of the domestic dispute report; asserts the record shows another officer was en route to respond to the report; and claims she called Chief Takeuchi twice—once after Officer Nisen arrested her but before he responded to the report and again after he went to her home in response to the report. (Dkt. 36 at pp. 14-17).

Viewing the evidence in the light most favorable to Mrs. Riley, the Court concludes Mrs. Riley has failed to establish the prima facie elements of a retaliation claim. Specifically, Mrs. Riley fails to show a substantial causal relationship between the constitutionally protected activity and the adverse action. Even assuming Mrs. Riley called Chief Takeuchi to complain about Officer Nisen *before* Officer Nisen went to Mrs. Riley's home and that Officer Nisen's conduct in response to the domestic dispute report was a chilling adverse action, no evidence, direct or otherwise, shows Officer Nisen was ever aware that Mrs. Riley complained about him. For

example, there is no evidence that Chief Takeuchi told Officer Nisen about either of his calls with Mrs. Riley, and the circumstantial evidence is inadequate to show Officer Nisen must have known about Mrs. Riley's complaint. Absent evidence showing or at least inferring Officer Nisen knew Mrs. Riley had complained about him, Mrs. Riley cannot prove that Officer Nisen was aware of Mrs. Riley's protected speech and that he took adverse action against her because of her complaint.

That another officer could have responded to Mrs. Riley's home or that the neighbor's report of domestic abuse could have been fabricated, as Mrs. Riley argues, are not genuine material factual issues precluding summary judgment. Even assuming the neighbor did make a false police report and another officer was available to respond to that report, those facts do not prove a causal connection between Mrs. Riley's speech and Officer Nisen's alleged adverse action. Accordingly, the Court grants summary judgment in favor of Officer Nisen on Count 5.

## IV. ORDER

**IT IS ORDERED that:**

1.      Defendant's Motion for Summary Judgment (Dkt. 30) is **GRANTED** in part and **DENIED** in part. The Court **GRANTS** Officer Nisen's summary judgment motion on Count 5 (retaliation) but **DENIES** his summary judgment motion on Count 2 (unlawful arrest), Count 3 (excessive force), and Count 4 (unlawful seizure of car).

2.      Plaintiff's Motion for Partial Summary Judgment (Dkt. 31) on Count 2 (unlawful arrest) and Count 4 (unlawful seizure of car) is **GRANTED**.

DATED: April 29, 2024

Amanda K. Brailsford
U.S. District Court Judge